BLANCHE, Justice.
Plaintiffs are a civic association and property owners in Corrine Park Subdivision and Corrine Park Extension Number Two situated in St. Bernard Parish. They brought suit against the parish police jury for damages to their homes which allegedly occurred because of periodic overflowing of the Kierr Canal allegedly due to lack of maintenance. The parties agreed during the pre-trial conference to try the first five contested issues dealing with the threshold question of whether or not the police jury was responsible for the maintenance and control of the canal on the record. The remaining issues dealt with the liability of the police jury and were to be decided only if the police jury was found to be responsible for maintenance of the canal.
The district court dismissed plaintiffs’ lawsuit, holding that the legislature vested responsibility for drainage in St. Bernard Parish to the Lake Borgne Basin Levee District[1] and that the St. Bernard Parish Police Jury did not expressly or tacitly accept responsibility for operation, maintenance and control of the Kierr Canal. The court of appeal reversed, 407 So.2d 438, and held that the police jury had assumed responsibility for the canal and had failed in its duty to properly maintain the canal. The court of appeal awarded damages to plaintiffs in the amounts which had been stipulated by the parties as the damages suffered as a result of the flooding. We granted writs to review the action taken by the court of appeal.
The police jury contends that primary responsibility for drainage in St. Bernard Parish is vested in the Lake Borgne Basin Levee District under the provisions of R.S. 38:1076(D)[2] and R.S. 38:113 [3] and that it never exercised its discretionary authority under R.S. 33:1236(13)[4] to undertake *108 maintenance of the canal. As the above statutes indicate, the Lake Borgne Basin Levee District originally was responsible for the Kierr Canal, but we find that the police jury did elect to undertake maintenance of the canal.
A survey of Corinne Park Subdivision, which refers to a “proposed canal”, was accepted by the Parish engineer on June 22, 1952. Also in the record is a drainage design plan specifically for Corinne Park which refers to the canal as “outfall canal” that was approved by the Parish engineer. The road design plan for the subdivision, which was approved by the Parish engineer on June 20,1953, includes a servitude for an outfall canal measuring 20.83 feet. It is uncontested that the canal in the survey, drainage and road design plans refers to the Kierr Canal.
Developers of the subdivision, by Act of Dedication on August 24, 1954, dedicated the Canal to St. Bernard Parish. On November 5, 1957 the St. Bernard Parish Police Jury, by resolution, accepted “. . . the off-site improvements from the St. Bernard Highway No. 1 (State Highway No. 39) to Claiborne Avenue for public use and perpetual maintenance; the said off-site improvements consisting of the concrete street known as Corinne Avenue from St. Bernard Highway No. 1 (State Highway No. 39) to Claiborne Avenue, and the concrete gutter bottom extensions, concrete curbing, and also the drainage system thereof, including catch basins and drainage lines.”
The Kierr Canal extends from St. Bernard Highway to the 20-Arpent Canal. Water flows from the streets into the drainage lines and through the pipes into the Canal which drains into the 20-Arpent Canal. From the maps, surveys, plans and documents in evidence, it appears the Kierr Canal is an integral and essential part of the drainage system in the subdivision. The specific reference in the resolution to the catch basins and drainage lines does not limit the police jury’s responsibility to these alone because, if the police jury intended to assume responsibility only for the catch basins and drainage lines, there would have been no need to include the additional reference to the “drainage system.”
The court of appeal’s determination that the police jury assumed responsibility for maintaining the canal is correct; however, the case must be remanded to determine if the police jury is liable for the plaintiffs’ damages caused by overflow of the canal allegedly due to faulty maintenance. The five issues tried on the record dealt only with the police jury’s responsibility for the canal, and did not address issues such as whether or not the police jury had inadequately maintained the canal, or whether or not the plaintiffs had contributed to the problem by allegedly throwing debris into the canal. The remaining issues also raise questions such as the duty of a parish police jury to remedy drainage difficulties in one area with priority over other problem areas when the funds available are insufficient to do all of the maintenance required.
*109 It is apparent from the pre-trial order that the parties agreed to try only the issue of the police jury’s responsibility for the canal on the record, and allowed three days for trial on the remaining issues if required. In the stipulation regarding damages, it specifically stated that the stipulation was “limited solely to the question of quantum”, and provided that the police jury “does not admit liability for the damages sustained.” Construing the language of the pre-trial order and the stipulation together, it is apparent that the parties initially sought a determination only on the issue of the police jury’s responsibility for the canal and that the later stipulation dealt only with the issue of quantum if the police jury were to be found liable to plaintiffs for their damages because of the failure of the police jury to properly maintain the canal.
For the reasons set forth above, the judgment of the court of appeal is affirmed in part and reversed in part and the matter is remanded to the trial court for a determination of the police jury’s liability.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.

. By Act 237 of 1948 the Chalmette Back Levee District had primary responsibility for drainage in St. Bernard Parish until 1964 when it was consolidated into the Lake Borgne Basin Levee District.

. R.S. 38:1076. General powers and duties of board
* * sk * * sk
D. The board shall be invested with the control of all public levees, back levees and levee drainage structures and all operating equipment in the district, with authority to require the Department of Public Works to lay out, furnish estimates, and perform all engineering work necessary to the location, construction and repairs of the levees and levee drainage, reserving, however, the right to the parishes in which the levees are located, also to provide funds and to construct and repair levees and levee drainage and exercise the powers now granted to them by law.

. R.S. 38:113. Control of drainage channels in levee and drainage districts
The various levee and drainage districts shall have control over all public drainage channels within the limits of their districts and for a space of one hundred feet on each side of the channel, selected by the district and recommended and approved by the Department of Public Works, whether the drainage channels have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels, and may adopt rules and regulations for preserving the efficiency of the drainage canals.

.R.S. 33:1236. Powers of police jury
The police juries shall have the following powers:

(13) To construct and maintain drainage, drainage ditches, and drainage canals; to open any and all drains which they may deem necessary and to do and perform all work in connection therewith; to cut and open new drains, ditches and canals, to ac *108 quire lands for necessary public purposes, including rights of way, canals and ditches by expropriation, purchase, prescription or by donation; to enter into contracts for the construction of such drainage works, and to purchase machinery and have the work performed under their own supervision; to allocate, use and expend the general alimony of the parish for any of the above purposes; to incur debt and issue bonds for drainage and drainage canals in the manner provided for by Subtitle II of Title 39; and use such other funds as may be legally expended for such purposes; to levy taxes for the maintenance of said drainage works in the manner provided for and under the authority of Article X, Section 10 of the Constitution of the State of Louisiana, as amended, and to construct any works and do any and all things necessary to effect proper drainage and carry this Paragraph into effect; to enter into contracts or agreements, under such terms and conditions as may be mutually agreeable with the State of Louisiana, through the Department of Public Works for the securing of state aid for the purposes herein authorized; . . . They may perform all other acts necessary to fully drain all the land in their respective parishes and maintain such drainage when established. This Paragraph is intended to furnish additional means whereby parishes in the State of Louisiana may accomplish the objects and purposes herein referred to, and shall be liberally interpreted.